UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| ERROLL TYLER, in his individual capacity and in his capacity as President and CEO of NAUTICAL TOURS, INC., and ALLENA TABB-HARPER, in her individual capacity;<br><br>            Plaintiffs,<br>v.<br><br>BOSTON POLICE COMMISSIONER, WILLIAM B. EVANS, in his official capacity; THOMAS LEMA, JR., Individually and in his official capacity as INSPECTOR OF CARRIAGES, HACKNEY CARRIAGE UNIT,<br>            Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | CA No.: 1:18-cv-10677 |

**COMPLAINT AND DEMAND FOR JURY TRIAL**

This action is commenced by Nautical Tours, Inc. (*hereinafter* "Nautical Tours"), Erroll Tyler (*hereinafter* "Tyler"), and Allena Tabb-Harper (*hereinafter* "Tabb-Harper") (collectively referred to as, "Plaintiffs") against the Boston Police Commissioner William B. Evans, in his official capacity and Lieutenant Thomas Lema, Jr. (*hereinafter* "Lema", "Lt. Lema") (collectively referred to as, "Defendants") commanding officer of the Boston Hackney Carriage Unit, in his official and individual capacities, in order to remedy and seek relief for the Defendants' deprivation of the Plaintiffs guaranteed protections under the Fourteenth Amendment of the United States Constitution.

JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331 and 1343(3) in that the controversy arises under the United States Constitution and 42 U.S.C. §1983.

2.  This Court has authority to award attorney's fees and costs pursuant to 42 U.S.C. §1988.

3.  Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims took place in Suffolk County, Massachusetts.

PARTIES

4.  Plaintiff, Nautical Tours, Inc., is a Massachusetts business corporation with a principal place of business at 25 Medford Street, Suite 2, Chelsea, Massachusetts 02150.

5.  Plaintiff, Erroll Tyler, in his individual capacity, is an individual residing at 910 Main Street, Suite 174, Melrose, Massachusetts 02176 and, in his official capacity, is the President and CEO of Nautical Tours, Inc.

6.  Plaintiff, Allena Tabb-Harper, is an individual residing at 153 Crawford Street, Dorchester, Massachusetts 02121.

7.  Defendant, William B. Evans, is the Police Commissioner for the City of Boston and the policymaker for the Boston Police Department. His usual place of employment is located at One Schroeder Plaza, Boston, Massachusetts 02120.

8.  Defendant, Thomas Lema, Jr., in his individual capacity, is an individual residing at 200 Sawyer Lane, Marshfield, Massachusetts 02050 and, in his official capacity, is a Lieutenant in the Boston Police Department and Inspector of Carriages and the decision maker for the Boston Hackney Carriage Unit. His usual place of business is One Shroeder Plaza, Boston, Massachusetts 02120.

FACTS COMMON TO ALL COUNTS

9.  Nautical Tours, Inc. is a Massachusetts corporation owned and operated by Errol Tyler, President/CEO, and Allena Tabb-Harper, Vice President, for the purpose of operating

amphibious motor vehicles for sightseeing and charter purposes on the streets of Boston, Massachusetts and Cambridge, Massachusetts and the waters of the Charles River and Boston Harbor.

10. In 2003, Nautical Tours began the process of obtaining the various licenses needed to operate a fleet of amphibious sight-seeing vehicles.

11. Nautical Tours sought and obtained three of the four licenses need to operate its proposed amphibious sightseeing motor vehicles, including (1) Commonwealth of Massachusetts, Department of Public Utilities, Certificate of Public Convenience and Necessity for the City of Cambridge; (2) Department of Public Utilities, Certificate of Public Convenience and Necessity for the City of Boston; and (3) Boston Transportation Department approval of sightseeing tour route.

12. The final set of licenses Nautical Tours requires to operate its fleet of amphibious vehicles is a license from the Boston Police Commissioner to operate each specific vehicle Nautical Tours proposes to operate.

13. Nautical tours first sought approval of its fleet of amphibious vehicles from the Massachusetts Department of Public Utilities ("Mass DPU"), which regulates the operation of bus companies in the Commonwealth of Massachusetts.

14. In a lawsuit that ultimately reached the Supreme Judicial Court ("SJC"), the Mass DPU argued that it was without authority to grant such a license.  *See* Nautical Tours, Inc. v. Dep't of Public Utilities, 369 Mass. 1007, 1009 (2014).

15. The SJC held that the Boston Police Commissioner had exclusive jurisdiction to grant such licenses pursuant to authority granted the Police Commissioner by the State

Legislature in 1913.  *See* <u>Nautical Tours, Inc. v. Dep't of Public Utilities</u>, 369 Mass. at 1009.

16. Boston Police Department Rule 404 delegates the licensing power for sightseeing vehicles to the Hackney Carriage Unit.

17. On April 10, 2015, Nautical Tours submitted nine (9) sightseeing vehicle applications (one for each amphibious vehicle Nautical Tours intends to operate) to the Hackney Carriage Unit of the Boston Police Department, the final licenses needed to operate its business.

18. Neither the Boston Police Commissioner nor the Hackney Carriage Unit ever provided a written response to or a final decision on the applications.

19. On June 17, 2015, 68 days after filing the original applications, Mr. Tyler and Mrs. Tabb-Harper visited the Boston Hackney Carriage Unit at One Shroeder Plaza, Boston, Massachusetts 02120 in order to deliver a request for an appeal hearing in hand.

20. On June 17, 2015, Julie Sussi refused to accept the request and stated that the Hackney Carriage Unit chose not to honor Boston Transportation Departments approved tour route because, according to Mrs. Sussi, the tour routes must be approved annually.

21. Upon information and belief, the Hackney Carriage Unit chose not to accept Nautical Tours approved tour routes to single out and delay Nautical Tours applications for nine (9) sightseeing vehicles.

22. On June 17, 2015, Mr. Tyler and Mrs. Tabb-Harper consulted with the BTD. Officials from the BTD confirmed that Nautical Tours did not need to receive approval annually for the proposed tour routes.

23. On June 22, 2015, Mr. Tyler and Mrs. Tabb-Harper returned to the Hackney Carriage Unit where they informed Lt. Thomas Lema that the BTD did not require annually approval of tour routes. Lt. Lema refused to accept the BTD's explanation.

24. On June 22, 2015, Mr. Tyler hand delivered an amendment to the original application documenting the approval of Nautical Tours' tour routes.

25. When Mr. Tyler asked Lt. Lema about the conflicting information from the BTD regarding the annual approval of tour routes, Lt. Lema responded, "Actually, we do what we want."

26. On June 22, 2015, Mrs. Susi provided Mr. Tyler and Mrs. Tabb-Harper with a new form with the label "New Company." This new form for the first time called for the Mr. Tyler's and Mrs. Tabb Harper's social security number. Neither the application already submitted by Nautical Tours, Inc. nor the application for "Existing Company" called for social security numbers.

27. Mr. Tyler was not told that Nautical Tours' nine (9) pending applications were denied or otherwise invalid by Mrs. Sussi or any other officer of the Hackney Carriage Unit when she provided the Mr. Tyler the "New Company" applications.

28. Where Nautical Tours already had submitted nine (9) applications, where those applications had been pending with the Hackney Carriage Unit for over two months, and where Mr. Tyler had not been told that those applications were denied, Mr. Tyler did not see a reason to file nine additional "New Company" applications and risk confusing or slowing down the process.

29. Nautical Tours did not withdraw its nine (9) applications submitted on April 10, 2015.

30. Upon information and belief, the Hackney Carriage unit created the "New Company" application in order to single out and delay Nautical Tours applications for nine (9) sightseeing vehicles.

31. Nautical Tours did not withdraw its nine (9) applications submitted on April 10, 2015.

32. On September 23, 2015, Mr. Tyler and Ms. Tabb-Harper went to the Hackney Carriage Unit to hand deliver two (2) letters to Lt. Lema requesting an update on the sightseeing applications and Nautical Tours request for an appeal.

33. On September 23, 2015, Mr. Tyler asked, "Do you have any idea how long it may take to process our petitions?" To which, Lt. Lema replied, "Well sometimes things move along more quickly when you know the right people."

34. On March 16, 2016, Nautical Tours sent a second follow-up request addressed to Lt. Lema of the Hackney Carriage Unit.

35. To date, the Hackney Carriage Unit has not acted on any of the nine (9) applications or otherwise responded in writing to Nautical Tours' subsequent requests.

36. Contemporaneous to filing this complaint, Nautical Tours commenced in the Massachusetts Superior Court of Suffolk County a complaint for declaratory judgment pursuant to G.L. c. 231A, §2 seeking a declaration of the rights, duty, status, or other legal relations under municipal ordinance or by-laws of their nine (9) applications for sightseeing vehicles.

COUNT I
VIOLATION OF 42 U.S.C. § 1983, DEPRIVATION OF DUE PROCESS UNDER THE
FOURTEENTH AMENDMENT OF THE UNITED STATES CONSTITUTION

37. Paragraphs 1-36 above are incorporated herein by reference in their entirety.

38. The Defendants have deprived the Plaintiffs of their right to due process guaranteed by the Fourteenth Amendment of the United States Constitution.

39. The Defendants acted under the color of state law when the Defendants deprived the Plaintiffs of their federal rights.

40. As direct and proximate cause of Defendants' violation of 42 U.S.C. § 1983, Plaintiffs have sustained injuries and damage, Plaintiffs continue to suffer damage including but not limited to, lost economic opportunity, lost financial support of investors, humiliation and emotional injury, as well as harm to their professional and commercial reputation.

COUNT II
VIOLATION OF 42 U.S.C. § 1983, DEPRIVATION OF DUE PROCESS BY DEFENDANT
LEMA, IN HIS INDIVIDUAL CAPACITY, UNDER THE FOURTEENTH AMENDMENT OF
THE UNITED STATES CONSTITUTION

41. Paragraphs 1-40 above are incorporated herein by reference in their entirety.

42. Defendant Lema, acting in his individual capacity, deprived the Plaintiffs of their right to due process guaranteed by the Fourteenth Amendment of the United States Constitution.

43. Defendant Lema acted under the color of state law when Defendant Lema deprived the Plaintiffs of their federal rights.

44. Defendant Lema acted with malice and/or reckless disregard for the Plaintiffs' federal rights.

45. As direct and proximate cause of Defendant Lema's violation of 42 U.S.C. § 1983, Plaintiffs have sustained injuries and damage, Plaintiffs continue to suffer damage including but not limited to, lost economic opportunity, lost financial support of investors, humiliation and emotional injury, as well as harm to their professional and commercial reputation.

7

COUNT III
VIOLATION OF 42 U.S.C. § 1983, DEPRIVATION OF EQUAL PROTECTION OF THE
LAW GAURANTEED BY THE FOURTEENTH AMENDMENT OF THE UNITED STATES
CONSTITUTION

46. Paragraphs 1-45 above are incorporated herein by reference in their entirety.

47. The Defendants have deprived the Plaintiffs of their right to equal protection of the law
guaranteed by the Fourteenth Amendment of the United States Constitution.

48. The Defendants acted under the color of state law when the Defendants deprived the
Plaintiffs of their federal rights.

49. The Defendants did not have a rational basis for singling out the Plaintiffs separately
from other applicants for sightseeing licenses.

50. The Defendants' decision to single out the Plaintiffs relied on malice and bad faith.

51. As direct and proximate cause of Defendants' violation of 42 U.S.C. § 1983, Plaintiffs
have sustained injuries and damage, Plaintiffs continue to suffer damage including but
not limited to, lost economic opportunity, lost financial support of investors, humiliation
and emotional injury, as well as harm to their professional and commercial reputation.

COUNT IV
VIOLATION OF 42 U.S.C. § 1983, DEPRIVATION BY DEFENDANT LEMA, IN HIS
INDIVIDUAL CAPACITY, OF EQUAL PROTECTION OF THE LAW UNDER THE
FOURTEENTH AMENDMENT OF THE UNITED STATES CONSTITUTION

52. Paragraphs 1-47 are incorporated herein by reference in their entirety.

53. Defendant Lema, in his individual capacity, deprived the Plaintiffs of their right to equal
protection of the law guaranteed by Fourteenth Amendment of the United States
Constitution.

54. Defendant Lema acted under the color of state law when Defendant Lema deprived the
Plaintiffs of their federal rights.

55. Defendant Lema did not have a rational basis for singling out the Plaintiffs separately from other applicants for sightseeing licenses.

56. Defendant Lema's decision to single out the Plaintiffs relied on malice and bad faith.

57. As direct and proximate cause of Defendant Lema's violation of 42 U.S.C. § 1983, Plaintiffs have sustained injuries and damage, Plaintiffs continue to suffer damage including but not limited to, lost economic opportunity, lost financial support of investors, humiliation and emotional injury, as well as harm to their professional and commercial reputation.

WHEREFORE, Plaintiffs pray that judgment be entered against Defendants, jointly and severally, and in favor of Plaintiffs for all damages and equitable relief available, including, but not limited to:

a.   An order that the Defendants make whole the Plaintiffs by providing compensation for any pecuniary losses, including, but not limited to, any lost economic opportunity, lost financial support of investors

b.   An order that the Defendants make whole the Plaintiffs for any emotional distress injury, and any other equitable damages in the amount to be determined at trial;

c.   Grant appropriate award of prejudgment interest, including an award of interest for all damages awarded to the plaintiff from the date this cause of action accrued;

d.   Grant punitive damages, as appropriate, to punish the Defendants for its malicious conduct and/or reckless and/or callous indifference to the Plaintiffs' rights guaranteed by federal law and the United States Constitution;

e.   Grant attorney's fees and costs in this action; and

f.   Grant such further relief as this Court deems necessary and proper.

Dated April 6, 2018

Respectfully Submitted,
By the Plaintiffs, through their attorneys,

/s/ Joseph Comenzo
Joseph Comenzo, Esq. (BBO# 667624)
John Koury, Esq. (BBO# 694088)
Upper Charles Law Group, LLC
10 Kearney Rd., #101
Needham, MA 02494
(617) 600.7150 | P
(603) 328.5976 | F
jcomenzo@uclawgroup.com
jkoury@uclawgroup.com