UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| ERROLL TYLER, individually<br>and as President and CEO of<br>NAUTICAL TOURS, INC., and<br>ALLENA TABB-HARPER, in her<br>individual capacity,<br><br>        Plaintiffs,<br><br>    v.<br><br>WILLIAM G. GROSS, in his official<br>capacity as Commissioner of the Boston<br>Police Department, and THOMAS LEMA,<br>JR., individually and in his official capacity<br>As Boston Police Inspector of Carriages,<br>Hackney Carriage Unit,<br><br>        Defendants. | *<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>* | <br><br><br><br><br><br><br><br><br>Civil Action No. 18-cv-10677-IT |

MEMORANDUM & ORDER

August 1, 2019

I.    Introduction

      This case stems from a long-running attempt by Nautical Tours, Inc. ("Nautical Tours") to obtain municipal street licenses to operate sight-seeing automobiles in the City of Boston ("sight-seeing automobile licenses"). In a related case against different defendants, the Massachusetts Supreme Judicial Court found the Massachusetts Department of Public Utilities without jurisdiction to issue the sought-after licenses, and that exclusive authority to issue the licenses rests with the Boston Police Commissioner. See generally Nautical Tours, Inc. v. Department of Public Utilities, 14 N.E.3d 314 (Mass. 2014). The SJC concluded by noting that:

> Nautical Tours is not without a remedy. Under rule 404 of the Boston police department's rules and procedures, there is an established mechanism by which Nautical Tours can apply for a license for a sightseeing automobile. Boston Police Department Rules and Procedures on Sight-Seeing Automobiles, Rule 404, § 2 (Applications for Sight-Seeing Licenses) (January 5, 2010). The rules further provide

> that "[a]ny person aggrieved by a final decision of the Police Commissioner under this section may seek relief in any court of competent jurisdiction as provided by the laws of the Commonwealth." Id. at § 11.4.4.7. Where, as here, there is no right of appeal expressly provided in St. 1931, c. 399, a party aggrieved by the decision *can seek judicial review* in the nature of certiorari. See G.L. c. 249, § 4.

Nautical Tours, Inc., 14 N.E.3d at 318 (emphasis added) (footnote omitted).

In the current matter, Erroll Tyler, Allena Tabb-Harper, and Nautical Tours (collectively, "Plaintiffs") brought suit against Boston Police Commissioner William G. Gross, in his official capacity, and Boston Police Lieutenant Thomas Lema, individually and in his official capacity as Inspector of the Hackney Carriage Unit (collectively, "Defendants"). Am. Compl. 1 [#46]. Plaintiffs assert that they applied for the sightseeing automobile licenses under City of Boston Rule 404, and that Defendants have not acted on their applications or provided them a final decision. Plaintiffs allege that Defendants' actions have deprived them of due process and their right to equal protection under the Fourteenth Amendment of the United States Constitution.

Plaintiffs seek damages pursuant to 42 U.S.C. § 1983 for lost economic opportunity, lost financial support from investors, harm to their professional and commercial reputations, and humiliation and emotional injury caused by Defendants' delay in processing Plaintiffs' applications. Plaintiffs allege: in Count I, a violation of due process by Defendants in their official capacity, id. ¶¶ 82-85; in Count II, violation of due process by Defendant Lema individually, id. ¶¶ 86-90; in Count III, violation of equal protection by Defendants in their official capacity, id. ¶¶ 91-96; in Count IV, violation of equal protection by Defendant Lema individually, id. ¶¶ 97-102.[1] Pending before the court is Defendants' Motion to Dismiss First Amended Complaint [#37] pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).

For the reasons described below, Defendants' motion is DENIED.

---

[1] Plaintiffs do not seek equitable relief here, but are seeking a writ of mandamus in state court to compel action on their license application. See Tyler v. Evans, No. 1884-cv-01097 (Mass. Super. Ct. filed Apr. 9, 2018). That matter is currently pending. Id.

II.     Factual Background

When considering a challenge pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), the court must accept as true all well-pled facts alleged in the complaint, but may "disregard[] statements in the complaint that merely offer 'legal conclusions couched as fact or threadbare recitals of the elements of a cause of action.'" Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011) (alterations omitted) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).

Nautical Tours is a Massachusetts corporation with the purpose of operating sightseeing amphibious motor vehicles in Boston and Cambridge, Massachusetts, as well as on the Charles River and in the Boston Harbor. Am. Compl. ¶ 9 [#46]. Nautical Tours is owned and operated by its President and CEO Erroll Tyler and Vice President Allena Tabb-Harper. Id. Nautical Tours has obtained permits to operate its fleet of vehicles, including a Certificate of Public Convenience and Necessity ("CPCN") for the City of Cambridge, a CPCN for the City of Boston, a municipal street license to operate its vehicles on Cambridge streets, and approval of its sightseeing tour route from the Boston Transportation Department. Id. ¶ 10. Nautical Tours has not been able to obtain the final set of required licenses, sightseeing automobile license from the Boston Police Commissioner for each sightseeing vehicle in its fleet. See id. ¶ 11.

On April 10, 2015, Nautical Tours submitted nine applications for sightseeing automobile licenses to the Hackney Carriage Unit of the Boston Police Department. Id. ¶ 31. At the time that Nautical Tours submitted the applications, it had arranged funding from outside investors to purchase the nine amphibious vehicles for which it sought the licenses. Id. ¶ 34. In June of that year, 68 days after filing the applications, Tyler and Tabb-Harper visited the Boston Hackney Carriage Unit, a division of the Boston Police Department tasked with acting on applications for sightseeing automobile license, to

deliver a request for an appeal hearing. Id. ¶¶ 20-22, 40. That same day, Julie Sussi[2] refused that request and stated that the Hackney Carriage Unit chose not to honor the Boston Transportation Department's approved tour route because tour routes had to be approved annually. Id. ¶ 41. Tyler and Tabb-Harper consulted with the Boston Transportation Department, who confirmed that Nautical Tours did not need to receive annual approval for its tour route, and that its tour route remains valid unless and until Nautical Tours seeks to change the route. Id. ¶ 43-44. Defendants do not require other sightseeing tour companies to submit annually approved tour routes when seeking new or renewal sightseeing vehicle licenses. Id. ¶ 67.

Five days later, Tyler and Tabb-Harper spoke to Defendant Lt. Thomas Lema, the Inspector of Carriages for the Hackney Carriage Unit. See id. ¶ 46. Plaintiffs informed Lt. Lema that the Boston Transportation Department did not require annual approval of tour routes. Id. Lt. Lema refused this explanation. Id. Tyler then hand delivered to Lt. Lema an amendment to Nautical Tours's original license applications that documented the approval of Nautical Tours's tour routes. Id. ¶ 47. When Tyler asked Lt. Lema about the conflicting information regarding the annual approval requirement for tour routes, Lt. Lema replied, "Actually, we do what we want." Id. ¶ 48.

Sussi then provided Tyler and Tabb-Harper with a new form to be filled out labeled "New Company," which, for the first time, required that Tyler and Tabb-Harper provide their social security numbers. Id. ¶ 49. Neither the application already submitted by Nautical Tours, nor the application for "Existing Companies," required license applicants to provide their social security numbers. Id. ¶ 49. Defendants do not require other sightseeing tour company owners to supply social security numbers when seeking new or renewed sightseeing vehicle licenses. Id. ¶ 69. Because none of the officers at the

---

[2] This person's position and title is not given, but it can be reasonably inferred that Sussi is a Boston Police Department employee.

Hackney Carriage Unit told Tyler that Plaintiffs' nine pending applications were denied or otherwise invalid, and Nautical Tours's nine applications had been pending for over two months, Tyler did not fill out the "New Company" forms. Id. ¶ 52-53.

In September 2015, Tyler and Tabb-Harper returned to the Hackney Carriage Unit to hand deliver two letters to Lt. Lema requesting updates on their sightseeing license applications and their request for an appeal. Id. ¶ 56. Tyler asked Lt. Lema how long it would take to process the applications, and Lt. Lema responded, "Well sometimes things move along more quickly when you know the right people." Id. ¶ 57.

In March 2016, National Tours sent a second follow-up request to Lt. Lema, and, having received no action on their applications, sent a letter to the Mayor of Boston in June 2017 outlining the efforts they had made to obtain sightseeing licenses and their allegations of disparate treatment. Id. ¶¶ 58-59. To date, the Hackney Carriage Unit has not acted on any of Nautical Tours's nine applications or otherwise responded to Nautical Tours's subsequent requests for an update or appeal. Id. ¶ 60. Tyler and Tabb-Harper have both invested personal funds into Nautical Tours to cover business expenses while they wait for their applications to be processed. Id. ¶¶ 76-78.

III.   Discussion

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A complaint need only be a "short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), but requires enough detail "to provide a defendant with fair notice of what the . . . claim is and the grounds upon which it rests." Ocasio-Hernandez, 640 F.3d at 12 (internal quotation marks omitted). The complaint "must

contain enough factual material to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." Id. at 12 (internal quotation marks omitted).

    a. Standing

In their Motion to Dismiss, Defendants asserted that Nautical Tours is not a corporation in good standing to do business in the Commonwealth and lacks the necessary Coast Guard certification to operate its vehicles, and therefore lacked standing to sue. Opp'n to Mot. to Amend at 4, 6-7 [#38]. In support of this argument, Defendants pointed to extrinsic evidence – corporate records as reported on the website of the Secretary of State of the Commonwealth and an alleged admission from ten years ago as to the Coast Guard certification. Id. at 6-7. Defendants further averred that Plaintiffs Tyler and Tabb-Harper lack standing because their claims are merely derivative of the company's. Id. at 5-6.

At the hearing on this motion, Defendants withdrew their challenge to Nautical Tours's standing, which this court treats as withdrawing their speaking motion. "As a jurisdictional requirement, standing to litigate cannot be waived or forfeited," Virginia House of Delegates v. Bethune-Hill, 139 S. Ct. 1945, 1951 (2019), however, and the court therefore considers whether the allegations in the complaint meet constitutional standing requirements.

In order to satisfy the "irreducible constitutional minimum" of Article III standing, Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992), a "plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1547 (2016). Defendants' challenge to Nautical Tours' standing rested on the last prong -- that Nautical Tours is not in good standing or ready to proceed if a license is granted, and thus any injury it suffered from the Defendants' action cannot be redressed here.

The complaint alleges that Nautical Tours is a Massachusetts corporation and that it has applied for and obtained all but one of the licenses needed to operate its proposed fleet of vehicles, Am. Compl. ¶¶ 9-10 [#46], and the court accepts that allegation as true on a facial attack. The complaint includes no suggestion of corporate dissolution. See Mass. Gen. Laws ch. 156B, §§ 99-101. The complaint need not allege that the corporation has filed all annual reports, for a failure to file such reports makes it subject to a fine, not ineligible to bring suit. See Mass. Gen. Laws ch. 156B, § 112. And even if the court considered Plaintiffs' decade-old statement that "[b]efore Nautical Tours opens for business, its vessels and crew will be certified by the U.S. Coast Guard," Compl. ¶ 59, Tyler v. City of Boston, No. 1:09-cv-10235-DPW, Docket No. 1 (filed Feb. 18, 2009), that statement does not suggest that Plaintiffs have not been damaged in the intervening years by Defendants' alleged failure to act on Nautical Tours's license applications. Accordingly, the court finds that Plaintiffs have standing to bring this action.

    b. Municipal Policy or Custom

Defendants contend that Plaintiff's claims against Commissioner Gross and Lt. Lema in their official capacities (Counts I and III) must be dismissed pursuant to Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690 n.55 (1978). Defendants argue that Plaintiff has not alleged a City of Boston "policy or custom" was "the moving force behind the alleged injury," but rather that the Defendants violated the City's municipal policy. Opp'n to Mot. to Amend at 7 [#38] (quoting Bd. of Cty. Comm'rs v. Brown, 520 U.S. 397, 403-05 (1997)).

In Monell, the Supreme Court held that a municipality is subject to section 1983 liability only when the injury complained of is caused by that municipality's "policy or custom." 436 U.S. at 694. A municipality cannot be held liable under section 1983 for an injury caused by a violation of its own policies. See Baker v. McCollan, 443 U.S. 137, 146-47 (1979); see, e.g. T.K. v. Town of Barnstable, No. 1:17-cv-11781-DJC, 2018 WL 3748166 at *10 (D. Mass. Aug. 6, 2018) (holding that a school's

7

violation of a municipality's "bullying plan" does not give rise to liability under § 1983). Further, to establish a municipal "custom," a plaintiff must show "practices… so permanent and well settled as to constitute a 'custom or usage' with the force of law." City of Canton v. Harris, 489 U.S. 378, 398 (1989) (quoting Adickes v. S.H. Kress & Co., 398 U.S. 144, 168 (1970)).

However, a single act of an employee may subject a municipality to section 1983 liability where the offending person's "edicts or acts may be fairly said to represent official policy." McMillian v. Monroe County, Ala., 520 U.S. 781, 784 (1997) (quoting Monell, 436 U.S. at 694); see also Pembaur v. City of Cincinnati, 475 U.S. 469, 480 (1986) ("[I]t is plain that municipal liability may be imposed for a single decision by municipal policymakers under appropriate circumstances."). To represent official policy, the actor must be the "final policymaker" in that particular area, or for that particular issue. McMillian, 520 U.S. at 785.

Section 3 of Chapter 399 of the Massachusetts Acts of 1931 provides that "[t]he police commissioner for the City of Boston shall have exclusive authority to license in said city sight-seeing automobiles and the persons operating them as drivers." 1931 Mass. Acts 557. The City of Boston implemented Rule 404 to govern the issuance of those licenses. Mem. in Supp. of Mot. to Dismiss Ex. C (hereinafter "Rule 404") [#19-3].[3] Under Rule 404,

> The Police Commissioner may annually grant licenses to suitable persons who apply to offer or furnish service by a Sight-seeing Automobile in Boston. Individuals deemed suitable pursuant to Chapter 399 of the Acts of 1931 by the Inspector of Carriages shall be granted permission to operate, and receive a license for, a Sight-seeing Automobile.

Id. § 2.1.1. Rule 404 requires the submission of a sightseeing route approved by the Transportation Commissioner of the City of Boston; a Certificate of Public Convenience and Necessity from the

---

[3] Rules and Procedures, Rule 404- Sight-Seeing Automobile Rules, https://static1.squarespace.com/static/5086f19ce4b0ad16ff15598d/t/52b9c2e3e4b02f7251dec364/1387905763006/Rule+404.pdf

Department of Public Utilities; a valid certificate of registration for each vehicle, including the date of registration and the vehicle identification number; a photograph or drawing of the vehicle; and, if requested, a contingency route approved by the Transportation Commissioner. Id. § 2.4.1. The rule states that the Police Commissioner reserves the right to deny an application for any reason he or she may determine and requires that, in the case of a denial, the Commissioner specify the reason to the applicant. Id. § 3.1.11.

Rule 404 leaves some ambiguity about whether it is the Boston Police Commissioner or the Inspector of Carriages who has final policymaking authority over the issue at stake here: the manner in which new applications for automobile sightseeing licenses are processed. Chapter 399 grants the Boston Police Commissioner exclusive authority to license these automobiles, and the first page of Rule 404 states that it constitutes "Rules and regulations established by the Police Commissioner for the City of Boston for Sight-seeing automobiles." Id. at 1. However, the Police Commissioner has delegated supervision of processing to the Office of the Inspector of Carriages, and Lt. Lema has the authority to make "minor rules necessary for the conduct and administration of his duties." Id. § 1.6. The extent of the "minor rules" is unknown at this time and is better left for a later stage in this litigation.

What is clear is that the state law and City rules grant one of these two individuals final decision-making authority over the complained-of application process. In Pembaur, the Supreme Court found that a single act by the County Prosecutor instructing the Sheriff's deputies to enter into an office sufficient to constitute an official municipal policy where the applicable state law gave that County Prosecutor the authority to issue such instructions. See 475 U.S. at 483. Here, the applicable state law gives the Police Commissioner the exclusive authority to control the licensing procedure giving rise to Plaintiffs' allegations, and the Police Commissioner has delegated certain procedural aspects of that role to the Inspector of Carriages. At this early stage of litigation, the court finds that Defendant Gross and

Defendant Lema, in their official capacities, are the final policymakers, and that their actions (or inactions) constitute City of Boston policy with respect to the procedural aspects of processing applications for sightseeing automobile licenses.

Accordingly, Plaintiffs are alleging injuries caused by the City of Boston's municipal policy and, as such, their claims survive Monell, 436 U.S. at 694.

    c.  Due Process Claims

Defendants claim that Counts I and II of Plaintiffs' Amended Complaint must be dismissed because they have failed to state a claim establishing a deprivation of due process. Mot. to Dismiss 1 [#37]. Defendants contend that because the Boston Police Commissioner has discretion to grant the sightseeing automobile licenses, Plaintiffs have no protected property interest in the licenses. Opp'n to Mot. to Amend 11-12 [#38] (citing Nautical Tours, Inc., 14 N.E.3d at 317 n.6); Rule 404 § 3.1.11 [#19-3]. Defendants also argue that Plaintiffs' due process claims rest on the Defendants' violation of Rule 404, and the Fourteenth Amendment's Due Process clause "does not incorporate the particular procedural structure enacted by state or local governments." Id. at 11 (citing Pollard v. Georgetown Sch. Dist., 132 F. Supp. 3d 208, 223-24 (D. Mass. 2015)).[4]

"An action for deprivation of property by state action without due process of law must include a showing that state law protects an identified property right said to have been violated." Caesars Mass. Mgmt. Co. v. Crosby, 778 F.3d 327, 331-32 (1st Cir. 2015). The First Circuit has held that applicants for a license may have a protected property interest which cannot be denied without due process, but only if the applicants can demonstrate a "legitimate claim of entitlement" to the license sought. Martinez-Velet

---

[4] At the hearing on their motion, Defendants argued that Plaintiffs' application was incomplete, and therefore they were not required to act on it. On a motion to dismiss, the court views all well-pled facts in the light most favorable to the non-moving party. Plaintiffs have alleged that they submitted a complete application. Am. Compl. ¶¶ 31, 35-37, 43-47, 50-55.

v. Simonet, 919 F.2d 808, 810 (1st Cir. 1990) (internal quotation marks omitted). "[I]f the state actor retains discretion to grant or withhold the permit or license, there is no protected property interest." Caesars, 778 F.3d at 333-34. A property interest will only exist if "the benefit, license or program for which [a plaintiff] applies is routinely granted to all applicants meeting objective or easily judged criteria." Welsh v. Paicos, 66 F. Supp. 2d 138, 164-65 (D. Mass. 1999).

Defendants are correct that Rule 404, chapter 399, and the Massachusetts SJC's prior ruling in Nautical Tours, Inc. v. Department of Public Utilities, vest exclusive authority to grant the sightseeing automobile licenses to the Boston Police Commissioner. See 14 N.E.3d at 317 n.6, 318. And, the plain language of Rule 404 gives the Police Commissioner significant discretion whether to grant the licenses. The language of City Rule 404 states that "[t]he Police Commissioner *may* annually grant licenses to suitable persons who apply to offer or furnish service by a Sight-seeing Automobile in Boston." Rule 404 § 2.1.1 [#19-3] (emphasis added). The Rule further states "[t]he Police Commissioner reserves the right to deny an Application for any reason that he/she may determine." Id. § 3.1.11. Given the significant discretion, Plaintiffs do not have a property interested in the sightseeing automobile licenses that is protected by the Fourteenth Amendment.[5] See Caesars, 778 F.3d at 333-34; Martinez-Velet, 919 F.2d at 810.

But this does not end the due process inquiry. Plaintiffs also assert a protected liberty interest: the right to make a living in their chosen profession for which the sought-after license is a prerequisite. Opp'n to Mot. to Dismiss 10 [#42]; see also First Am. Compl. ¶¶ 85, 90 ("Plaintiffs have sustained

---

[5] Nor does the Police Commissioner's failure to follow Rule 404 by itself give rise to a claim for a due process violation. "An agency's failure to follow its own rules may be significant in administrative law, but the Due Process Clause does not incorporate the particular procedural structures enacted by state or local governments." Torres-Rosado v. Rotger-Sabat, 335 F.3d 1, 10 (1st Cir. 2003). A claim proceeding against the City of Boston for failing to issue a license pursuant to Rule 404 should be pursued in state court, and indeed, the Plaintiffs' concurrent state court claim make this very claim. Tyler, No. 1884-cv-01097 at 6-7; see Torres-Rosado, 335 F.3d at 10.

injuries and damage [and] continue to suffer damage including . . . lost economic opportunity"). Plaintiffs assert that the Defendants' failure to act on their applications have deprived them of this liberty interest without due process by depriving them of both a decision on their application and the right to judicial review of an adverse decision. See id. at 10.

In Raper v. Lucey, the plaintiff was repeatedly denied a driver's license from the Massachusetts Registrar of Motor Vehicles without being given a reason for the denial. 488 F.2d 748, 750 (1st Cir. 1973). The First Court noted that while plaintiff did not have a protected *property* interest in the driver's license itself, he did have a personal *liberty* interest under the Fourteenth Amendment "to make use of one's own property, here a motor vehicle, as a means of getting from place to place, whether in pursuit of business or pleasure, . . . which . . . cannot be denied or curtailed by a state without [procedural] due process of law," Id. at 752 (quoting Wall v. King, 206 F.2d 878, 882 (1st Cir. 1953)). The court thus concluded that "fourteenth amendment due process will attach to state procedures regulating the application and issuance of a motor vehicle operator's license." Id. The court highlighted the plaintiff's "strong interest in adequate notice of the specific reasons behind the Registrar's decision . . . [as] due process within administrative procedures requires the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" Id. at 752-53 (quoting Goldberg v. Kelly, 397 U.S. 254, 267 (1970)). Relevant to the claims asserted here, the "[r]easons for governmental action affecting important individual rights must be timely proffered in order to satisfy due process." Id. at 753.

In the case at hand, Plaintiffs have a protected liberty interest in their ability to make a living in their chosen profession. See Greene v. McElroy, 360 U.S. 474, 492 (1959) ("[T]he right to hold specific private employment and to follow a chosen profession free from unreasonable government interference comes within the "liberty" and "property" concepts of the Fifth Amendment."); see also Mead v. Indep. Ass'n, 684 F.3d 226 (1st Cir. 2012) (holding that plaintiff's liberty interests include the right "to pursue

12

one's chosen profession free from unreasonable government interference."). A state's denial of this protected liberty interest without the exercise of adequate procedural process may give rise to a viable section 1983 claim. See Raper, 488 F.2d at 752. Accordingly, prior to being denied their protected liberty interest to operate their business—as Defendants are allegedly doing by failing to act on their applications for sightseeing automobile licenses—Plaintiffs are entitled an opportunity to be heard at a meaningful time and in a meaningful manner. See id. at 753.

In general, "[t]here is no mechanical formula by which the adequacy of state procedures can be determined. To the contrary, 'due process is flexible and calls for such procedural protections as the particular situation demands.'" Amsden v. Moran, 904 F.2d 748, 753 (1st Cir. 1990) (quoting Morrissey v. Brewer, 408 U.S. 471, 481 (1972)). But, the issue before this court is not whether the procedure under Rule 404 provides adequate process; instead, Plaintiffs allege that by refusing to act, Defendants have deprived them any process *whatsoever*. See Amsden, 904 F.2d at 753 ("When a procedural due process claim is advanced, the proper focus must be on the manner in which the state has acted: "how and when" the alleged deprivation was effected."). Plaintiffs allege that they filed their applications for the automobile licenses in April 2015 and have yet to receive a response granting or denying their nine applications or otherwise addressing their requests for an update about the status of those applications. See Am. Compl. ¶¶ 31, 53, 56-61 [#46].

Accordingly, Plaintiffs have alleged sufficient facts to sustain a claim under 42 U.S.C. § 1983 that Defendants have deprived them of their protected liberty interests without adequate procedural due process.

    d. Equal Protection Claims

In Counts III and IV of their First Amended Complaint, Plaintiffs assert a "class of one" equal protection claim. Defendants argue that Plaintiffs have failed to show that the parties to whom they

compare themselves are similarly situated, and therefore Plaintiffs have failed to adequately allege an equal protection violation. Opp'n to Mot. to Amend at 13 [#38] (citing Freeman v. Town of Hudson, 714 F.3d 29, 38 (1st Cir. 2013) (holding that class of one claims require "an extremely high degree of similarity between [the plaintiffs] and the persons to whom they compare themselves.")). Specifically, Defendants point out that Plaintiffs' stated comparators, Duck Tours, Inc., and Super Duck Tours, Inc., are existing companies applying for license renewals, not new companies applying for new licenses. Id. Thus, say Defendants, the comparators do not have the necessary "high degree of similarity." Id. (citing Freeman, 714 F.3d at 38).

To establish a "class of one" equal protection claim, a plaintiff must demonstrate that he or she has been intentionally treated differently from other persons who are "similarly situated," and that there is "no rational basis" for this disparate treatment. Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000). The existence of a comparator is an essential element of such a claim, and plaintiffs must demonstrate an "extremely high degree of similarity between themselves and the persons to whom they compare themselves." Snyder v. Gaudet, 756 F.3d 30, 34 (1st Cir. 2014) (quoting Cordi-Allen v. Conlon, 494 F.3d 245, 250 (1st Cir. 2007) (holding that a "class of one" claim was unavailable to a small business owner accused of violating a land use ordinance as his use of the building for manufacturing was distinct from the prior owner's use for an optometry practice)). "To determine whether two or more entities are 'similarly situated,' we ask 'whether a prudent person, looking objectively at the incidents, would think them roughly equivalent and the protagonists similarly situated.'" SBT Holdings, LLC v. Town of Westminster, 547 F.3d 28, 34 (1st Cir. 2008) (quoting Barrington Cove Ltd. P'ship v. Rhode Island Hous. & Mortg. Fin. Corp., 246 F.3d 1, 8 (1st Cir. 2001)).

Defendants assert that the present case is most directly comparable to Gianfrancesco v. Town of Wrentham, in which the plaintiff alleged that the town subjected his tavern to a selective application and

enforcement of town regulations. See 712 F.3d 634, 636 (1st Cir. 2013). The plaintiff in that case asserted that he was treated differently from other "similarly situated" tavern owners, in violation of his right to equal protection. Id. at 639-40. The First Circuit held that the mere assertion without evidence of how a comparator was similarly situated in a relevant manner to the challenged governmental action did not establish a "class of one" claim. Id. at 640.

Plaintiffs, on the other hand, argue that the most applicable comparison to the present case is SBT Holdings, where developers of a condominium real estate project alleged that the town had intentionally and wrongfully singled them out for enforcement of the town's environmental regulations, but did not take any enforcement actions against the purchasers of their property or the abutting property owners. See 574 F.3d at 33. The plaintiffs in SBT Holdings claimed that they differed from the new property owners only with respect to when they occupied the condominium units. Id. The court held that this was an apt comparison as the defendants had no adequate basis for treating the plaintiffs differently than the subsequent owners of the same properties. Id.

In the present case, Plaintiffs assert that the applications for sightseeing automobile licenses for new and existing companies were identical at the time Plaintiffs' nine applications were first submitted, and that the comparators—other amphibious touring companies—were required to provide the same information as Plaintiffs. See Am. Compl. ¶¶ 50, 69-72 [#46]. Plaintiffs further allege that Defendants do not require the existing companies to submit annually approved tour routes or provide social security numbers, whereas this information is now being required from Plaintiffs. Id. ¶¶ 43, 49, 67, 69. Yet, according to Plaintiffs, the applications for new and renewed sightseeing vehicle licenses submitted by existing companies were and continue to be promptly acted upon, whereas Plaintiffs' applications have been left in limbo. Id. at ¶¶ 60, 71.

As in SBT Holdings, the chief distinction cited by Defendants between Plaintiffs and their comparators is the time at which the companies were formed: the comparators were existing companies operating amphibious vehicles as of 2010 seeking new and renewal licenses, whereas Nautical Tours is a new company seeking new licenses. See Opp'n to Mot. to Amend at 14 [#38]. But Defendants fail to explain the relevance of this difference for purposes of the time necessary to review applications for sightseeing automobile licenses, or whether or not to process those applications.

Accordingly, for purposes relevant to the allegations in the Amended Complaint, Plaintiffs have alleged sufficient facts to establish a "class of one" equal protection claim.

   e. Qualified Immunity

Finally, Defendants argue that Lt. Lema is entitled to qualified immunity for claims brought against him in his personal capacity (Counts II and IV) because Plaintiffs have failed to show that their federal equal protection or due process rights were infringed. Moreover, even if Plaintiffs did show these violations by Defendants' failure to render a decision, the right to a decision was not clearly established at the relevant time. Opp'n to Mot. to Amend at 16 [#38].

To resolve a government official's claim of qualified immunity, the court must determine whether the plaintiff has alleged facts that make out a claim for a constitutional violation, and, if so, determine whether that right was "clearly established" at the time of the defendant's alleged misconduct. Pearson v. Callahan, 555 U.S. 223, 232 (2009); see also Mitchell v. Miller, 790 F.3d 73, 77 (1st Cir. 2015). "The 'clearly established' inquiry, in turn, has two related aspects." Rocket Learning, Inc. v. Rivera-Sanchez, 715 F.3d 1, 9 (1st Cir. 2013). First, "the legal contours of the right in question" must be so clear that "a reasonable officer would have understood that what he was doing violated the right." Mlodzinski v. Lewis, 648 F.3d 24, 32-33 (1st Cir. 2011); Snyder, 756 F.3d at 33 (quoting Ashcroft v. al-Kidd, 563 U.S. 731, 741 (2011) ("[E]xisting precedent must have placed . . . beyond debate" that the

"particular conduct" under consideration violated that right.). Second, the "clearly established" inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." Rocket Learning, 715 F.3d at 9 (quoting Brosseau v. Haugen, 543 U.S. 194, 198 (2004)). "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable [official] that his conduct was unlawful *in the situation he confronted*." Id. (alterations and emphasis in original) (quoting Maldanado v. Fontanes, 568 F.3d 263, 269 (1st Cir. 2009)).

As the court has previously stated, supra section III(c), Plaintiffs have adequately stated a claim in Count II that Lt. Lema denied them procedural due process by refusing to process their sightseeing automobile license applications. See Newman v. Massachusetts, 884 F.2d 19, 23 (1st Cir. 1989) ("Notice and an opportunity to be heard have traditionally and consistently been held to be the essential requisites of procedural due process."). Although no court may have yet had an opportunity to rule on the effect of the Inspector of Carriage's failure to act under Rule 404, it is more than reasonable to infer that Lt. Lema was reasonably aware that stonewalling Plaintiffs' completed applications by failing to take any action deprived Plaintiffs of the procedural notice and opportunity to be heard that due process demands. See, e.g. Eves v. LePage, No. 16-1492, 2019 WL 2521731 at *16 (1st Cir. June 19, 2019) ("A factually on-point precedent certainly helps in deciding what reasonable officials would know. But it's 'not necessary . . . that the very action in question has previously been held unlawful.'" (quoting Ziglar v. Abbasi, 137 S. Ct. 1843, 1866 (2017))). The SJC made clear that Plaintiffs had a potential "remedy" in judicial review of an adverse decision, and it is reasonable to conclude at this juncture that Lt. Lema was aware that his failure to act would deprive Plaintiffs of this procedural process. See Nautical Tours, Inc., 14 N.E.3d at 318.

Similarly, the right to equal treatment of those similarly situated is clearly established, and a reasonable police officer in Defendant Lema's position would know that disparate treatment of similarly

situated applicants violates that right to equal protection. See, e.g., City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985) ("The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike."). And, the court finds it was clear to a reasonable officer in Lt. Lema's role that processing applications for existing companies but refusing to process the applications for similarly situated new companies, with no additional reason for the differential treatment, violates that right to equal treatment. Lt. Lema fails to provide any reason why an application for a new or renewed license from an existing company can be processed immediately, whereas the exact same application form from a new company cannot be processed within four years. See Am. Compl. ¶ 50 [#46].

Taking all of Plaintiffs' well-pled factual assertions as true, Lt. Lema has failed to establish that he is entitled to qualified immunity from suit. See DiMarco-Zappa v. Cabanillas, 238 F.3d 25, 35-36 (1st Cir. 2001) (because qualified immunity is an affirmative defense, defendant has the burden of proof).[6]

IV. Conclusion

For the foregoing reasons, Defendants' Motion to Dismiss First Amended Complaint [#37] is DENIED.

IT IS SO ORDERED.

Date: August 1, 2019                    /s/ Indira Talwani
                                        United States District Judge

---

[6] Defendants again argued at the hearing on this motion that it was not clearly established that they had to respond to Plaintiffs' incomplete applications. But, again, the premise upon which Defendants rely, that Plaintiffs' applications were incomplete, is a factual dispute that must be viewed in the light most favorable to Plaintiffs. As the facts surrounding the license application are developed through discovery, it is possible that Lt. Lema will be able to re-raise the issue of qualified immunity at the summary judgment stage. Mitchell v. Forsyth, 472 U.S. 511, 526 (1985) ("Even if the plaintiff's complaint adequately alleges the commission of acts that violated clearly established law, the defendant is entitled to summary judgment if discovery fails to uncover evidence sufficient to create a genuine issue as to whether the defendant in fact committed those acts.").